

**United States Department of Justice**

*United States Attorney*
*Northern District of New York*

| | |
|---|---|
| *445 Broadway, Room 218* | *Tel.: (518) 431-0247* |
| *James T. Foley U.S. Courthouse* | *Fax: (518) 431-0249* |
| *Albany, New York 12207-2924* | |

April 22, 2026

**By ECF**

Hon. Daniel J. Stewart
U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 314
Albany, New York 12207

    Re: <u>United States v. Jahquel Shaheim Robertson</u>, Case No. 1:26-CR-115

Dear Judge Stewart:

The government respectfully submits this letter in support of its motion for an order of detention for defendant Jahquel Robertson because he presents a serious risk of flight and danger to the community. *See* 18 U.S.C. § 3142(f)(2). Robertson was arrested and arraigned on Tuesday, April 21, 2026, on a 14-count indictment which charges him with a litany of economic crimes, including bank fraud conspiracy, in violation of 18 U.S.C. §§ 1344 and 1349, and aggravated identity theft, in violation of 18 U.S.C. § 1028A. Because the defendant (a) presents a serious risk of continuing to wreak economic harm while on release; (b) has access to stolen personal identifying information; (c) faces substantial penalties if convicted; and (d) was the lead organizer of a large scale conspiracy for which the strength of the evidence is overwhelming, the defendant presents both a significant flight risk and a danger of the community. No condition or combination of conditions that can reasonably secure his appearance in court, so he should therefore be detained.

    I.    <u>Background</u>

As detailed in the indictment, beginning in February 2023, Robertson devised a scheme to defraud businesses, individuals, and financial institutions throughout the United States. Dkt. 1. He did so by creating and using fraudulent checks that he attempted to deposit or cash at businesses and financial institutions.[1] In many cases, Robertson himself created these fraudulent checks; in others, he provided necessary information to coconspirators who printed them for him.

---

[1] As with any detention hearing, the government may present evidence by proffer, and hearsay evidence is acceptable. 18 U.S.C. § 3142(f)(2); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000).

Letter to Hon. Daniel J. Stewart
United States v. Jahquel Shaheim Robertson, Case No. 1:26-CR-115
April 22, 2026
Page 2


Robertson, 31, has made a living from committing financial crimes his entire adult life. His criminal history began at age 17 with grand larceny charges. Since then, he has obtained five separate misdemeanor convictions and a felony conviction. His history shows that he is commonly arrested on New York State felony charges which could be broadly described as financial crimes yet has virtually always pled them down to a misdemeanor. His only felony conviction comes from 2017, when he was convicted of possession of a forgery device with intent to use, but even there, the plea allowed him to escape eight counts of possession of a forged instrument in the second degree along with a grand larceny charge. His other history includes three petit larceny or attempted petite larceny convictions (from 2015, 2017, and 2022), a resisting arrest conviction from 2021 which allowed him to escape a possession of forged instruments charge, as well as a 2024 forgery conviction.[2]

The allegations in the indictment suggest—and the proof will show—Robertson substantially upscaled his criminal conduct over the course of 2023 and into early 2024. The defendant bribed a postal worker, Denton Tolliver, to steal checks out of the mail. Tolliver has already pled guilty to accepting a bribe as a public official. *See generally* Case No. 1:25-CR-170 (AMN). Over the course of their arrangement, Robertson obtained over $1,000,000 in checks, which he then worked to have reprinted in the names of other coconspirators for deposit. Robertson traveled extensive distances to get complete the frauds: on one instance he drove to Massachusetts to pick up named co-conspirator Britani Williams, then drove her to New York City to withdraw tens of thousands of dollars that had cleared from a fraudulent check worth nearly $50,000. *See* Dkt. 1, Count 6. He traveled to New York to pick up fraudulent U.S. Treasury checks from coconspirator Nathaniel Williams, and he traveled to New Jersey to attempt to withdraw fraud proceeds after a fraudulent check of over $80,000 was deposited into the account of a coconspirator.

Robertson's conduct was enabled and furthered by his prolific use of social media. Robertson used Facebook, Instagram, and Telegram to further the scheme by openly soliciting coconspirators. His Facebook profile—which bore the name "Rich Scamma"—was accessible to the public and frequently posted "stories" inviting other Facebook users with accounts at particular banks such as Broadview or JP Morgan Chase to work with him by promising quick payouts. He messaged with dozens of potential coconspirators to solicit their personal banking information or other identifying information so that he could have fraudulent checks addressed to

---

[2] The 2024 conviction is separately notable because it stems from conduct which also forms the basis of parts of the indictment, including Counts 1 and 10. His admission of guilt in that case constitutes a party admission and is admissible here in federal court as direct evidence of his guilt on Counts 1 and 10. *See United States v. Frederick*, 702 F. Supp. 2d 32, 36-37 (E.D.N.Y. 2009); *see also United States v. Andreadis*, 366 F.2d 423, 433 (2d Cir. 1966) (affirming the admission into evidence of a defendant's admissions made in connection with the entry of a state guilty plea to a charge of false advertising that were relevant to at least one element of the federal mail fraud charge arising from the advertising). That admission also shows the weight of the evidence as to those counts is very strong.

Letter to Hon. Daniel J. Stewart
United States v. Jahquel Shaheim Robertson, Case No. 1:26-CR-115
April 22, 2026
Page 3

them for mobile or ATM deposit. He also ran a Telegram group chat offering to sell photos of his stolen checks, images which would then be used by others to create additional fraudulent checks.

During the course of the conspiracy, moreover, Robertson—not content with working solely with coconspirators whom he would have to provide a cut of the fraudulent proceeds to—moved to obtain, transfer, and use the personal identifying information of real-life victims to gain control over their bank accounts and deposit even more fraudulent checks. These included some whose debit cards were stolen from the mail by Tolliver and provided to Robertson. Since the return of the indictment, the government has identified an additional victim that it anticipates will support another count of aggravated identity theft against Robertson.

II.      Legal Standard

At tomorrow's detention hearing, the government must ultimately persuade the court by a preponderance of the evidence that the defendant is a flight risk or by clear and convincing evidence that the defendant is a danger to the community. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person; and (4) the seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g).

III.      Argument

All four factors enumerated in § 3142(g) point towards the defendant's detention here.

a.  *Nature and Circumstances of the Offense*

Robertson's charges are both extensive and serious. The bank fraud conspiracy that Robertson is the alleged instigator of involved actual and intended losses exceeding $1,000,000. Much of that loss stems from the stolen checks he obtained from Tolliver, which (at least initially until the funds were remitted by the insured financial institutions) deprived numerous local businesses of payments. He obtained numerous individuals' personal identifying information, which has led to the aggravated identity theft charges carrying mandatory minimum terms of incarceration.

The indictment charges Robertson in 13 of the 14 counts. While the case remains in its preliminary stages, the government estimates that if convicted on all counts Robertson's estimate guidelines range before acceptance of responsibility would be 262-327 months, plus an additional mandatory 2 years for the aggravated identity theft. He thus faces substantial exposure, which supports detention. *United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) ("[Sentencing] Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee,"); *United States v. Zhang*, 55 F.4th 141, 151 (2d Cir. 2022) ("The

Letter to Hon. Daniel J. Stewart
United States v. Jahquel Shaheim Robertson, Case No. 1:26-CR-115
April 22, 2026
Page 4

prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence."); *United States v. Londono-Villa*, 898 F.2d 328, 329 (2d Cir. 1990) (post-conviction finding that defendant had a "powerful incentive to flee" where he faced a mandatory minimum sentence of ten years and a potential Sentencing Guidelines range of 292 to 365 months' imprisonment).

### b. *Weight of the Evidence*

The weight of the evidence is overwhelming. Over the course of the investigation, law enforcement has obtained Robertson's direct messages across numerous messaging platforms, including Facebook, Instagram, Telegram, and Apple Messages, in which Robertson openly discusses the commission of the charged crimes. As noted *supra*, moreover, his admission of guilt in NYS court to conduct which led to his November 15, 2023, arrest is strong evidence of guilt on Counts 1 and 10. Should this case proceed to trial, the government will present hundreds of Robertson's own messages and voice memos to show his involvement in the alleged crimes, and will introduce bank records aligning with those messages.  This strong evidence of guilt provides "a considerable additional incentive to flee."  *United States v. Millan*, 4 F.3d 1038, 1046 (2d Cir. 1993); *see also United States v. Sabhnani*, 493 F.3d 63, 76 (2d Cir. 2007) (finding detention appropriate because, in part, "the evidence of [the defendants'] guilt, both direct and circumstantial, appears strong"); *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"); *United States v. Bruno*, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of  upon conviction is likely to be long a defendant has stronger motives to flee.").

### c. *History and Characteristics*

The defendant's lifelong involvement in financial crimes, detailed above, also shows he is a danger to the community. *United States v. Madoff*, 586 F. Supp. 2d 240, 252 (S.D.N.Y. 2009) ("The court may also consider 'economic harm' as evidence of dangerousness." (cleaned up)); *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007) ("A danger to the community does not only include physical harm or violent behavior. The concept of 'safety' may include non-physical harm."). The harm alleged in the indictment is substantial, in that it alleges over a million dollars in potential loss.

The government further expects that the pretrial services report will indicate that Robertson does not currently (and has never consistently) maintained any form of legitimate employment, which provides him with additional incentive to continue making money the only way he knows how: scamming.

### d. *Seriousness of the Danger Posed by Release*

The federal investigation in this matter, moreover, suggests that Robertson did not just stop committing fraud in January 2024. Bank records obtained through the investigation also show

Letter to Hon. Daniel J. Stewart
United States v. Jahquel Shaheim Robertson, Case No. 1:26-CR-115
April 22, 2026
Page 5

that attempts to deposit fraudulent checks into accounts belonging to Robertson occurred in May and November 2025. And a preliminary review of evidence seized at the time of Robertson's arrest shows that he has continued to peddle fraudulent checks throughout the Capital Region. Specifically, a laptop seized from the residence Robertson was located at when he was arrested, which was unlocked via the same passcode as other devices law enforcement know to belong to Robertson, contains check writing software consistent with devices Robertson possessed in 2023 that were used in furtherance of the check fraud scheme. Because his fraudulent activity cannot be contained, Robertson presents a danger to the community that no set of conditions can adequately address. *See United States v. Alli*, 2024 WL 3520450 (E.D.N.Y. July 24, 2024) (collecting cases and finding similarity to prior convictions "evinces not only the Defendant's further propensity for sustained fraud, but his lack of remorse for the previous crimes."). And his potential access to the internet only increases the risk. *Id.* at *8 (collecting cases).

Finally, conditions less severe than detention, like home detention and electronic monitoring, will not sufficiently mitigate the defendant's risk of flight. These conditions "at best elaborately replicate a detention facility without the confidence of security such a facility instills." *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993). Thus, "[i]f the government does not provide staff to monitor compliance extensively, protection of the community would be left largely to the word of [the defendants] that [they] will obey the conditions." *Id.* Here, given the risk of flight presented by this defendant, it would be reasonable for the Court to conclude that he will not abide by home detention or electronic monitoring conditions.

IV.    Conclusion

For the reasons set forth above, the government respectfully submits that a detention hearing is authorized and that no condition or combination of conditions can reasonably assure Robertson's return to court. He should be detained.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

JOHN A. SARCONE III
First Assistant United States Attorney

By:    */s/ Joseph S. Hartunian*
Joseph S. Hartunian
Assistant United States Attorney
Bar Roll No. 704398